IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| AXIOM RESOURCE MANAGEMENT, INC., ) ) ) Plaintiff, ) ) v. ) ) ALFOTECH SOLUTIONS, LLC, *et al.*, ) ) Defendants. ) ) | Civil Action No. 1:10cv1011 (LMB/JFA) |

## REPORT AND RECOMMENDATION

This matter is before the court on two motions filed by plaintiff Axiom Resource Management, Inc. ("Axiom") against defendants Alfotech Solutions, LLC ("Alfotech") and Garnel Alford ("Alford"). The first is plaintiff's Motion to Hold Defendants Garnel Alford and Alfotech in Contempt of Court and Refer Garnel Alford to the United States Attorney for the Eastern District of Virginia to Compel Compliance. (Docket no. 72) ("Motion for Contempt"). The second is plaintiff's Motion to Impose Sanctions on Certain Defendants for Violation of Order to Compel Production of Documents. (Docket no. 98) ("Motion for Sanctions"). Given the nature of the sanctions that the undersigned believes are appropriate, a report and recommendation is being submitted to the District Judge pursuant to 28 U.S.C. § 636(b).

### Procedural Background

This case was initiated by the filing of a complaint by Axiom on September 9, 2010 naming as defendants Alfotech, Alford, five additional named defendants, and ten Doe

1

defendants.[1] (Docket no. 1) ("Compl."). Plaintiff's complaint alleged that defendants engaged in a fraudulent scheme in which they unlawfully withheld or diverted payments from the United States that were due to plaintiff under a subcontract. (See Docket no. 1-2).

Plaintiff's complaint sought money damages of $502,812.05 under theories of fraud in the inducement (Count II), constructive fraud/constructive fraud in the inducement (Count III), breach of contract (Count IV), conversion (Count V), unjust enrichment/quasi-contract (Count VII) by all defendants, and violations of Virginia Code § 8.01-27, *et seq.* by Alfotech, Alford, and defendant Carrie Cotton ("Cotton") (Count VI). Plaintiff's complaint also sought treble damages of $1,508,436.15 for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.* (Count I). Finally, plaintiff sought an accounting of all the monies defendants have received from the U.S. government (Count VIII), a pre-judgment attachment of the treble damages sought pursuant to Va. Code § 8.01-533 and -534 (Count IX), as well as punitive damages, attorney's fees and costs.

Plaintiff filed with the complaint an *Ex Parte* Motion for a Temporary Restraining Order and Preliminary Injunction Seeking an Attachment of Certain Assets Pending a Final Judgment (Docket no. 2) ("TRO Motion") along with a memorandum in support (Docket no. 3) and a notice of hearing date (Docket no. 4). On September 17, 2010, after hearing the argument of plaintiff's counsel (Docket no. 7), the District Judge granted the TRO Motion (Docket no. 8).

In the Order issued on September 17, 2010 the District Judge required "that defendants and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, be and are enjoined from withdrawing or otherwise disposing of any funds from Account Number XXXXXXXXXXXX9466 held by Capitol One Bank located at

---

[1] The complaint named as defendants "Alfotech Solutions, LLC a/k/a ASI, Garnel E. Alford a/k/a Garnet E. Alford a/k/a Al Alford, George Alford, Jonathan S. Stapley, Francois E. Furman, Gail Alford, Carrie Cotton, and John and Jane Does 1-10." (Docket no. 1).

2

1680 Capitol One Drive, McLean, VA 22101, and any and all bank accounts held in the name of defendant Alfotech that plaintiff shall identify." (Docket no. 8) ("Temporary Restraining Order" or "TRO"). Pursuant to the TRO, plaintiff deposited a bond of $5,000.00 with the court. (Docket no. 9).

Alfotech and Alford were served on September 20, 2010 by delivery of a copy of the complaint and summons to Gail Alford, wife of Garnel Alford, at 21215 Encino Ash, San Antonio, Texas, 78259; an answer to the complaint from each of Alfotech and Alford was due on October 12, 2010. (Docket nos. 14, 15). The affidavits of service state that Alfotech and Alford were also served with the following documents, in addition to the complaint and summons; plaintiff's TRO Motion, the notice of hearing on the TRO Motion, the minute entry for the September 17, 2010 hearing, and the Temporary Restraining Order.[2] (Docket nos. 14, 15).

Pursuant to the TRO, a show cause hearing was held on October 1, 2010; defendants failed to appear and failed to file any objection to the proposed preliminary injunction. (Docket no. 23). That same day, the District Judge converted the Temporary Restraining Order into a Preliminary Injunction. (Docket no. 24) ("Preliminary Injunction").

On October 26, 2010, defendants Alfotech and Alford filed an answer to plaintiff's complaint. (Docket no. 38) ("Answer"). A Scheduling Order (Docket no. 33) and a Rule 16(b) Scheduling Order (Docket no. 49) were entered requiring that all discovery be concluded by March 11, 2011. On February 28, 2011, the undersigned granted plaintiff's request to extend the discovery period until April 11, 2011 in order to implement and execute a settlement agreed to in principle by the parties. (Docket nos. 60, 61). On or around the April 11, 2011 discovery cut-

---

[2] The Temporary Restraining Order also ordered "pursuant to Federal Rule of Civil Procedure 65(b) that the defendants shall appear before this Court on the 1st day of October, 2010 at 10:00 A.M. to show cause, if there is any, why this Court should not enter a preliminary injunction enjoining them from conduct temporarily restrained by this Temporary Restraining Order." (Docket no. 8).

3

off, the settlement appeared to have fallen apart as plaintiff begun filing various discovery motions and motions seeking a further extension of the discovery period.

A final pretrial conference was held on April 21, 2011, where the District Judge heard argument on a number of motions; plaintiff's Motion Seeking to Extend Discovery and Compel Responses to its Document Demands (Docket no. 65) ("Motion to Compel"), plaintiff's Motion for Contempt (Docket no. 72), and a Motion to Withdraw as Counsel filed by defendants' counsel (Docket no. 79).[3] The District Judge permitted defendants' counsel to withdraw. (Docket no. 88). A jury trial was scheduled to begin on July 5, 2011. (Docket no. 87).

The District Judge granted in part plaintiff's Motion to Compel, ordering that "defendants produce all outstanding documentary discovery, including all requested checks, wire receipts, and bank statements, to the plaintiff by May 4, 2011." (Docket no. 89). Also on April 21, 2011, the District Judge issued an Order directing Alford to appear before the court to show cause as to why he should not be held in civil contempt for violating the TRO and Preliminary Injunction entered in this case.[4] (Docket no. 90) ("Show Cause Order"). Defendant Alford was warned that "failure to appear at the hearing...shall constitute further cause for holding [him] in contempt of court and may result in [his] incarceration." (Docket no. 90). The U.S. Marshals Service served the Show Cause Order on Alford by substituted service on his wife, Gail Alford, at Alford's home at 21215 Encino Ash, San Antonio, Texas, 78259 on April 25, 2011. (Docket no. 96).

On May 6, 2011, plaintiff filed the Motion for Sanctions (Docket no. 98) along with a memorandum in support (Docket no. 98-1). Also on May 6, 2011, the District Judge found it appropriate to enter, in addition to the Show Cause Order, an Order directing that "all monies

---

[3] Argument was also presented on plaintiff's Motion to Amend its Complaint to Add Defendants (Docket no. 67) which was denied by the District Judge.
[4] Defendant Carrie Cotton was also ordered to show cause, however, the District Judge held that the show cause as to Ms. Cotton was satisfied on May 13, 2011. (Docket no. 108).

4

paid by the Government to the parties' (Plaintiff and Defendant Alfotech) joint escrow account...be held by an authorized representative and/or agent of TD Bank unless said funds are to be disbursed to Axiom Resource Management under the parties' escrow agreement until further order of this Court." (Docket no. 101). On May 11, 2011, substitute counsel for defendants Alfotech and Alford entered an appearance before the court. (Docket no. 104).

On May 13, 2011, a hearing was held on the Show Cause Order and argument was also presented on plaintiff's Motion for Sanctions. (Docket no. 108). Appearances were made by counsel for the parties and the individual defendants Alford and Cotton also appeared. *Id.* Later that day the District Judge issued an Order (Docket no. 109) holding open the Motion for Contempt (Docket no. 72), the Motion for Sanctions (Docket no. 98), and the Show Cause Order (Docket no. 90) as to Alfotech and Alford until May 27, 2011. The Order specifically required defendants to "fully comply with all outstanding discovery requests by providing the plaintiff with all requested bank records, checks, wire receipts, and other documents, or if such documents are not available, by providing signed and sworn affidavits, under penalty of perjury, to that effect" by May 27, 2011. (Docket no. 109). Further, Alfotech and Alford were ordered to "make a significant cash payment to the plaintiff as earnest money in this matter" by May 27, 2011. *Id.*

On May 27, 2011, counsel for the parties as well as the individual defendant Alford appeared before the undersigned. (Docket no. 111). Counsel for Alfotech and Alford agreed with plaintiff's counsel's representation that not a single document or affidavit as to the unavailability of documents was produced by defendants pursuant to the District Judge's Order of May 13, 2011. Counsel for defendants also stated that neither Alfotech nor Alford has made

any cash payment pursuant to the Order of May 13, 2011. This report and recommendation followed.

## Proposed Findings & Recommendations

The facts giving rise to the need for sanctions at this time are undisputed and demonstrate a remarkable disobedience in the face of numerous court Orders. Defendants Alfotech and Alford (hereinafter, collectively "defendants") have blatantly failed to respond to discovery requests, have failed to produce documents, and have acted in contravention of the court's Temporary Restraining Order and Preliminary Injunction.

### I. Sanction for Violating the TRO and Preliminary Injunction

The Supreme Court has long recognized the power of the district courts to enforce its judgments and decrees. *Riggs v. Johnson County*, 73 U.S. 166, 187 (1867). In the discovery context, Federal Rule of Civil Procedure 37 permits a court to treat "the failure to obey any order except an order to submit to a physical or mental examination" as contempt of court. Fed. R. Civ. P. 37(b)(2)(A)(vii).

This court has held that a party seeking to hold another party in civil contempt of court must prove the following four elements by clear and convincing evidence: "(1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) ... that the decree was in the movant's 'favor'; (3) ... that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) ... that [the] movant suffered harm as a result." *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000) (citing *Colonial Williamsburg Found. v. The Kittinger Co.*, 792 F. Supp. 1397, 1405-06 (E.D. Va. 1992), *aff'd*, 38 F.3d 133, 136 (4th Cir. 1994)).

6

The Fourth Circuit has stated that a court may impose civil contempt sanctions "to coerce obedience to a court order or to compensate the complainant for losses sustained as a result of the contumacy." *Cromer v. Kraft Foods North America, Inc.*, 390 F.3d 812, 821 (4th Cir. 2004) (quoting *In re General Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995) (internal quotations omitted)). "Although courts have broad discretion in fashioning remedies for civil contempt, which include ordering the contemnor to reimburse the complainant for losses sustained and for reasonable attorney's fees, remedies and sanctions must be limited to either a remedial or compensatory purpose." *Buffalo Wings Factory, Inc. v. Mohd*, 574 F. Supp. 2d 574, 577-78 (E.D. Va. 2008) (quoting *U.S. v. United Mine Workers of America*, 330 U.S. 258, 259, 67 S.Ct. 677 (1947)).

It is clear in this case that Alfotech and Alford have knowingly violated the terms of the TRO and Preliminary Injunction entered by this court such that it is appropriate to hold them each to be in civil contempt of court. First, defendants were served with the Temporary Restraining Order on September 20, 2010 which provided notice of the October 1, 2010 show cause hearing. (Docket nos. 14, 15). Plaintiff also filed a declaration of plaintiff's counsel, Eric S. Crusius, in support of plaintiff's Motion for Contempt that demonstrates defendants' actual knowledge of the TRO. (Docket no. 72-1) ("Crusius Decl."). The Crusius declaration establishes that on September 22, 2010, defendant Cotton sent an email to Alford with the Temporary Restraining Order attached and with the subject line "Order Not to Withdraw Funds".[5] (Crusius Decl. ¶ 9, Docket no. 72-7). As to the second factor, it is clear that both the TRO and the Preliminary Injunction were in plaintiff's favor. (Docket nos. 8, 24).

---

[5] When asked in his deposition for "your understanding of what [the TRO] requires you to do or not do," defendant Alford responded, "I'll take the Fifth on that." (Docket no. 72-8 at 32).

Third, Alfotech and Alford knowingly violated the terms of this court's Orders. Mr. Crusius declares that the bank records show a total of $59,473.86 in withdrawals from Alfotech's Capital One Account from the issuance of the TRO through February, 2011. (Crusius ¶ 12, Docket no. 72-9). Plaintiff has presented evidence showing that after the issuance of the TRO, defendants established a new bank account ("ING Direct Account") and instructed Alfotech's escrow agent to deposit funds into the new account instead of the Capital One Account named in the TRO. (Crusius Decl. ¶ 14, Docket nos. 72-12, 72-13). A total of $49,424.00 is alleged to have been diverted to and disbursed from the ING Direct Account. (Docket no. 72-13). Plaintiff has also presented evidence that defendants opened another new bank account ("BB&T Account") in January, 2011 from which a total of $26,435.20 has been disbursed. (Crusius Decl. ¶ 15, Docket no. 72-14). Defendants' verified response to plaintiff's Interrogatory No. 6 also indicates that significant withdrawals and payments were made from Alfotech accounts between October, 2010 and March, 2011. (Docket no. 72-4 at 37-39).

The court's TRO and Preliminary Injunction state clearly that defendants and all their agents are "enjoined from withdrawing or otherwise disposing of any funds" from the Alfotech Capital One Account as well as "any and all bank accounts held in the name of defendant Alfotech that plaintiff shall identify." (Docket nos. 8, 24). The evidence presented by plaintiff indicates that defendants have flagrantly disobeyed these court orders by withdrawing, diverting, or disbursing at least $135,333.15 from Alfotech bank accounts between October, 2010 and March, 2011. As for the fourth and final element for proving contempt, it is clear that plaintiff is harmed by defendants' actions because these actions have made recovery of the monies sought in plaintiff's complaint significantly more difficult. Plaintiff argues that the defendants' only remaining asset, the prime contract entitling Alfotech to monthly payments from the U.S.

government, depreciates as the end date of the prime contract nears, making preservation of the existing funds all the more important. (See Docket no. 72-2 at 18).

For these reasons, the undersigned recommends that Alfotech and Alford be found to be in civil contempt of court for violating the terms of the TRO and the Preliminary Injunction. The undersigned recommends that plaintiff be compensated for defendants' acts by an award of the full amount of attorney's fees and expenses incurred by plaintiff in filing the Motion for Contempt and related pleadings, and appearing at the hearings before this court on April 21, May 13 and May 27, 2011 relating to the motion for contempt. Defendants should also be ordered to disgorge the funds withdrawn or disbursed in violation of the TRO and Preliminary Injunction. Finally, defendants' contemptuous actions support a finding that defendants are in default and the entry of a default judgment, to be discussed below.

## II. Sanction for Failure to Comply with Order Compelling Discovery

Federal Rule of Civil Procedure 37(b) governs the court's authority to impose sanctions for violations of a court's Order to compel discovery. *See* Fed. R. Civ. P. 37(b)(2); *Rabb v. Amatex Corp.*, 769 F.2d 996, 999 (4th Cir. 1985) (stating that Rule 37(b)(2) provides comprehensively for enforcement of any order to provide or permit discovery). The district courts have broad discretion to impose sanctions, to dismiss an action or to render a default judgment pursuant to Rule 37(b)(2)(A) where a party has failed to comply with discovery orders, the exercise of which is reviewed for an abuse of discretion. *Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494, 505 (4th Cir. 1977). As the Supreme Court has explained:

> [T]he most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.

9

*Nat'l Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976). The Fourth Circuit has made clear that district courts "must have the authority to control litigation before them, and this authority includes the power to order dismissal of an action for failure to comply with court orders." *Ballard v. Carlson*, 882 F.2d 93, 95 (4th Cir. 1989).

Rule 37(d) provides that the court may order sanctions if "a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response." Fed. R. Civ. P. 37(d)(1)(A)(ii). Rule 37(b) provides that a party may be sanctioned for failing to comply with a discovery order in one of a number of listed forms, including "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi).

The Fourth Circuit has articulated four factors a district court must consider in determining what sanctions to impose under Rule 37: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." *Anderson v. Found. for Advancement, Educ. & Employment of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998) (affirming entry of a default judgment entered for failure to comply with discovery orders); *accord Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 348 (4th Cir. 2001) (*en banc*) (affirming entry of sanction for failure to supplement answers to interrogatories).

The undersigned notes that defendants' pattern of failing to comply with the Federal Rules was established early in this litigation, as defendants' answer was filed two weeks late, on October 26, 2010, when an answer from each of defendant Alfotech and Alford was due on October 12, 2010. Plaintiff's discovery requests were served on February 12, 2011 and

defendants' responses were served on April 5, 2011, the deadline agreed to by the parties. (See Docket no. 98-1 at 6). After noting inadequacies in the responses and attempting to obtain supplemental responses, plaintiff filed the Motion to Compel which was granted in part by the District Judge; defendants' supplemental responses were ordered by May 4, 2011. (Docket nos. 65, 89). When defendants failed to produce documents by the court-ordered deadline, plaintiff filed the Motion for Sanctions and the District Judge again ordered defendants to comply fully with plaintiff's requests by May 27, 2011. (Docket nos. 98, 109). Appearing before the undersigned on May 27, 2011, counsel for defendants admitted that his clients had produced no documents since the court's most recent order and could not provide any good cause for his clients' failure to comply. Counsel also admitted that defendants failed to comply with the District Judge's Order for a significant cash payment to be made to the plaintiff. The undersigned also notes that defendants have failed to file papers opposing plaintiff's discovery motions in this matter.

In this case, an analysis of the four factors warrants a recommendation that the sanction of an entry of default and a default judgment is appropriate. Defendants have failed to comply with two explicit orders of the District Judge compelling defendants to "fully comply with all outstanding discovery requests by providing the plaintiff with all requested bank records, checks, wire receipts, and other documents, or if such documents are not available, by providing signed and sworn affidavits, under penalty of perjury, to that effect." (Docket nos. 89, 109).

First, Alfotech and Alford have acted in bad faith by disregarding the orders of this court compelling them to comply fully with plaintiff's discovery requests and by disregarding their obligations under the Federal Rules of Civil Procedure. In this circuit, bad faith includes willful conduct, where the party "clearly should have understood his duty to the court" but nonetheless

"deliberately disregarded" it. *Rabb*, 736 F.2d at 1000. Defendants' willful disregard of the Federal Rules and this court's Orders is the *sine qua non* of bad faith.

Second, defendants' actions have resulted in prejudice to plaintiff. As stated above, defendants have failed to provide the documents requested and the trial date is now approximately one month away. The result is real and significant prejudice to plaintiff's ability to prepare its case for trial, to ensure that defendants have not continued to violate the TRO and Preliminary Injunction, or to seek an alternative resolution of the claims.

Third, the need to deter this particular form of non-compliance weighs heavily in the favor of a default judgment. Defendants have not just dragged their feet in discovery or been slow to provide responses. Defendants have willfully and consistently stood in defiance of the Federal Rules, have failed to comply in any way with multiple Orders of this court, and the undersigned has recommended that they be found to be in contempt for willfully violating the Preliminary Injunction on multiple occasions. If the court fails to enforce its Orders at this juncture, it would send the wrong message to recalcitrant parties and their counsel: that defiance goes unpunished. Fourth, lesser sanctions are inappropriate in this case. Defendants have provided no supplemental responses to plaintiff's discovery requests, despite multiple Orders of this court and with a trial date rapidly approaching.

For these reasons, the undersigned recommends that defendants Alfotech and Alford be found to be in default and that a default judgment be entered in favor of the plaintiff.

### III. Default Judgment

Having found that the sanction of a default judgment is appropriate in this case, the undersigned will now evaluate and recommend a format for the default judgment in this case. A defendant in default admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6)

("An allegation - other than one relating to the amount of damages - is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). Rule 55(b)(2) provides that a court may conduct a hearing to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. The court must have both subject matter and personal jurisdiction over a defaulting party before it can render a default judgment.

Plaintiff alleges that this suit is properly brought under either the court's federal question jurisdiction pursuant to 28 U.S.C. § 1331 because it arises under the federal RICO law, 18 U.S.C. § 1964, *et seq.*, or under the court's jurisdiction pursuant to 28 U.S.C. § 1332 based on complete diversity of citizenship and an appropriate amount in controversy. (Compl. ¶¶ 4-5). Plaintiff alleges that the state law claims are properly brought under the court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367. (Compl. ¶ 6). Plaintiff is a corporation organized in, and having a principal place of business in, the Commonwealth of Virginia. (Compl. ¶ 9). Defendant Alfotech is a limited liability company organized in, and having a principal place of business in, the state of Texas; plaintiff alleges that Alfotech is now defunct.[6] (Compl. ¶ 10, Answer ¶ 10). Defendant Garnel Alford is an individual citizen of the state of Texas and is the President, CEO, and a member of Alfotech. (Compl. ¶ 11, Answer ¶ 11).

Plaintiff alleges that the exercise of personal jurisdiction by this court over the defendants is proper under both the Virginia long-arm statute, Va. Code § 8.01-328.1, and the Due Process

---

[6] Plaintiff's complaint identifies the membership of the limited liability company by naming each member as an individual defendant, including ten Doe defendants. Each known individual defendant is alleged to be a citizen of the state of Texas or of the District of Columbia. (Compl. ¶¶ 11-17). No defendant is alleged to be a citizen of the Commonwealth of Virginia.

13

Clause because defendants regularly engage in business within, and derive substantial revenue from services rendered in, the Commonwealth of Virginia. (Compl. ¶ 7). Plaintiff alleges that venue is appropriate in this court under 28 U.S.C. § 1391 because defendants regularly conduct business in this district and/or because a substantial part of the claims arose in this district.[7] (Compl. ¶ 8).

The undersigned recommends a finding that this court has subject matter jurisdiction over this action, that the court has personal jurisdiction over defendants Alfotech and Alford, and that venue is proper in this court.

### a. Liability

Plaintiff's complaint assserts a number of causes of action against the named defendants. Plaintiff's prayer for relief seeks compensatory damages of $502,812.05 under a number of these claims; Count II (fraud in the inducement), Count III (constructive fraud/constructive fraud in the inducement), Count IV (breach of contract), Count V (conversion), Count VI (Virginia Code § 8.01-27, *et seq.*), and Count VII (unjust enrichment/quasi-contract). (Compl. at 21). Given that the same relief is sought on each of these claims, it is not necessary to address each count. The recommendations that follow will focus on plaintiff's claim for breach of contract which is at the center of this case and for which the facts sufficient to support a finding of liability are not in dispute.

For two of the claims in the complaint plaintiff seeks other relief. Plaintiff seeks treble damages of $1,508,436.15 under Count I (RICO) and punitive damages under Count II (fraud in the inducement). (Compl. at 21). It is not clear whether the facts alleged in the complaint are sufficient to establish liability on these two claims. Accordingly, the undersigned does not

---

[7] The parties' subcontract also includes a clause stating that "[a]ny litigation under this Subcontract, if commenced by Axiom, shall be brought in a court of competent jurisdiction in the Commonwealth of Virginia." (Docket no. 1-2 at 7).

14

recommend that a default judgment be entered on these claims, but if plaintiff intends to pursue these counts it may do so by bringing these claims to trial and presenting additional evidence to support those claims and the relief sought.

### i. Breach of Contract

Under Virginia law, the required elements for proving breach of contract are, "(1) a legal obligation of a defendant to the plaintiff; (2) a violation or breach of that right or duty; and (3) a consequential injury or damage to the plaintiff." *Westminister Investing Corp. v. Lamps Unlimited, Inc.*, 237 Va. 543, 379 S.E.2d 316, 319 (1989) (quoting *Caudill v. Wise Rambler, Inc.* 210 Va. 11, 13, 168 S.E.2d 257, 259 (1969)).

Plaintiff alleges that defendants have breached the legal obligations of the subcontract entered into by the parties on September 30, 2008. (Compl. ¶ 85). Plaintiff alleges that defendants breached the subcontract by failing to pay the amounts owed to Axiom under the terms of the subcontract and that plaintiff has suffered damages as a direct result of defendants' actions. (Compl. ¶¶ 85-87).

It is not disputed that on or about September 30, 2008 the United States of America Medical Research Acquisition Activity ("the Government") entered into a prime contract with Alfotech. (Compl. ¶ 27, Answer ¶ 85, *see also* Docket no. 1-1). Under the prime contract Alfotech was to be paid its allowable costs for work performed plus a fixed fee, except for certain line items which were to be performed by subcontractors; on these line items Alfotech was to be paid strictly for the allowable costs. (Compl. ¶¶ 28-29). On September 30, 2008, Axiom and Alfotech entered into a subcontract under which Axiom was responsible for providing personnel and logistical support for Alfotech's use in performing the prime contract. (Compl. ¶¶ 32-33, *see also* Docket no. 1-2). Under the subcontract, Axiom would send monthly

invoices to Alfotech for services performed at the approved billing rates which would then be included in Alfotech's invoices to the Government. (Compl. ¶ 34).

Plaintiff alleges that upon receiving payments from the Government for services performed by Axiom, defendants diverted the payments and failed to pay the amounts due to Axiom under to the subcontract and Axiom's invoices.[8] (Compl. ¶¶ 35-38). Axiom sent an invoice to Alfotech for each month from June 2009 to December 2009, for a total amount invoiced of $502,812.05.[9] (Compl. ¶ 43). Axiom did not receive any payments on these invoices though Alfotech billed the Government and received payment in return; plaintiff alleges that the individual defendants diverted the payments for their personal use. (Compl. ¶¶ 41-43).

The undersigned recommends that a default be entered against defendants Alfotech and Alford and a default judgment be entered on Count IV of the complaint finding that defendants committed breach of contract.

### b. Relief Sought

Rule 54(c) of the Federal Rules of Civil Procedure provides that a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). As stated above, plaintiff seeks a judgment of $502,812.05 on its claim for breach of contract, representing the amounts invoiced to Alfotech for services performed under the subcontract from June 2009 to December 2009. (Compl. ¶ 43).

The undersigned recommends that a judgment be entered against defendants in the amount of $502,812.05, representing the unpaid invoices for plaintiff's services from June, 2009 through December, 2009 with interest from December, 2009 until paid.

---

[8] Defendants admitted that Alfotech billed the Government for services performed by Axiom, but denied that Alfotech received payments for those services, and denied that any payments were diverted. (Answer ¶ 38).
[9] Defendants admitted that the invoices sent to Alfotech are accurate. (Answer ¶ 43).

## IV. Attorney's Fees

Federal Rule of Civil Procedure 37(a) states that if a motion to compel discovery is granted in part, the court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). Federal Rule of Civil Procedure 37(b) directs that "instead of or in addition to" the sanctions provided for failure to comply with a court order, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

The District Judge has twice entered an Order compelling defendants to provide discovery, the first granting in part plaintiff's Motion to Compel, and yet defendants have still failed to comply. At the May 27, 2011 hearing before the undersigned, counsel for defendants was given the opportunity to address the award of expenses and costs and did not object to this court ordering payment of attorney's fees, requesting merely that the fees be reasonable. The undersigned directed counsel to meet and confer by Thursday, June 2, 2011 and to inform the court if counsel could agree on a reasonable amount to be awarded in attorney's fees. Should counsel not be able to agree at that time, counsel for the plaintiff was instructed to file a pleading identifying a proper amount of attorney's fees, with a response from defendants due five (5) days later, and with the matter to then be decided by the court without oral argument. If necessary, that award will be made by the undersigned magistrate judge pursuant to his authority under 28 U.S.C. § 636(b)(1)(A).

## Recommendation

For the reasons stated above, the undersigned recommends that the Motion for Contempt (Docket no. 72) be granted. Defendants Alfotech and Alford should be found to be in civil contempt of court for failing to comply with the TRO and Preliminary Injunction. The undersigned recommends that plaintiff be awarded all expenses, including reasonable attorney's fees, incurred in filing the Motion for Contempt and in appearing before the court on April 21, May 13 and May 27, 2011 relating to the Motion for Contempt. The undersigned also recommends that defendants be ordered to disgorge any and all funds withdrawn, diverted or disbursed in violation of the TRO and Preliminary Injunction.

The undersigned recommends that the Motion for Sanctions (Docket no. 98) be granted. A default judgment should be entered against defendants Alfotech and Alford on Count II of the complaint, finding that Alfotech and Alford committed breach of contract, in the amount of $502,812.05 with interest from December, 2009 until paid.

The undersigned further recommends that the terms of the TRO entered by the court on September 17, 2010 (Docket no. 8) and converted into a Preliminary Injunction on October 1, 2010 (Docket no. 24) be converted into a Permanent Injunction, enjoining Alfotech, its subsidiaries, related companies, officers, agents, servants, employees, attorneys, and those persons in active concert or participation with Alfotech who receive actual notice of the injunction from withdrawing or otherwise disposing of any funds from any bank account held in the name of Alfotech. The Permanent Injunction should remain in effect during the pendency of any appeal of the judgment ordered by this court and until the judgment is satisfied. Upon the entry of a default judgment in this matter, the undersigned recommends that the bond posted by plaintiff be released.

## Notice

The parties and the public are notified that objections to this report and recommendation must be filed within fourteen (14) days of service of this report and recommendations in accordance with 28 U.S.C. § 636(b)(1)(C) and a failure to file timely objections waives appellate review of the substance of the report and recommendations and waives appellate review of any judgment or decision based on this report and recommendation.

Entered this 3rd day of June, 2011.

/s/
John F. Anderson
United States Magistrate Judge

Alexandria, Virginia

John F. Anderson
United States Magistrate Judge